No. **CR 14   00531 RMW**   PSG

E-filing

SEALED BY ORDER OF COURT

Filed
OCT 2 9 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### *SAN JOSE DIVISION*

### THE UNITED STATES OF AMERICA

*vs.*

MARK FEATHERS

## INDICTMENT

**COUNTS ONE TO SEVENTEEN:** 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 (Securities Fraud)

**COUNTS EIGHTEEN TO TWENTY-NINE:** 18 U.S.C. § 1341 (Mail Fraud)

*A true bill.*

_____
*Foreperson*

*Filed in open court this* **29** *day of*

*A.D. 2014*

_____
UNITED STATES MAGISTRATE JUDGE

Bail. $ **No Bail Arrest Warrant**

MELINDA HAAG (CABN 132612)
United States Attorney

*Filed OCT 29 2014 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA SAN JOSE*

*SEALED BY ORDER OF COURT*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CR 14 00531 RMW PSG

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR |
| Plaintiff, | VIOLATIONS: |
| v. | 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R.§§ 240.105-5, 240.10b-1, and 240.10b-2 (Securities Fraud); 18 U.S.C. § 1341 (Mail Fraud) (SAN JOSE VENUE) |
| MARK FEATHERS, | |
| Defendant. | |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment, unless otherwise specified:

Relevant Individuals and Entities

1. MARK FEATHERS ("FEATHERS") was a resident of Los Altos, California.

2. Small Business Capital Corp. ("SBCC") was a privately-held California corporation formed in 2004 with its principal place of business in Los Altos, California. FEATHERS was the founder, CEO, and a director of SBCC.

3. SBCC was the sole manager of three investment funds, Investors Prime Fund, LLC

INDICTMENT                                    1

("IPF"), SBC Portfolio Fund, LLC ("SPF"), and SBC Senior Commercial Mortgage Fund, LLC ("SCMF") (collectively, referred to herein as the "Funds"). Through SBCC, FEATHERS was the controlling person of IPF, SPF and SCMF. IPF was the managing member of a subsidiary company, Small Business Capital, LLC ("SBC LLC").

4. IPF was a California limited liability company formed by FEATHERS in May 2005, with its principal place of business in Los Altos, California. SBCC was the sole manager of IPF. IPF was engaged in the business of investing in loans secured by first deeds of trust on commercial and income-producing residential real estate located primarily in California.

5. SPF was a California limited liability company formed by FEATHERS in July 2007, with its principal place of business in Los Altos, California. SBCC was the sole manager of SPF. SPF was engaged in the business of investing in loans secured by deeds of trust on commercial and income-producing residential real estate in California and other states.

6. As of June 2012, FEATHERS and SBCC had raised a total of more than $50 million from over 250 investors through the offer and sale of securities in the form of membership interests in the Funds.

### The Operating Agreements of IPF and SPF

10. IPF and SPF entered into similar operating agreements with SBCC. These operating agreements defined the terms of SBCC's duties and obligations as manager of IPF and SPF. The operating agreements were signed, or were to be signed, by FEATHERS on behalf of SBCC, and by FEATHERS as "attorney-in-fact" for the investors in IPF and SPF.

11. The operating agreements expressly provided that SBCC owed a fiduciary duty to IPF and SPF, as the sole manager of each Fund.

12. At all relevant times, FEATHERS and SBCC had ultimate authority over IPF and SPF, including the content of any statements made by IPF or SPF in connection with their offering of securities to investors, such as the advertisements, newsletters, and offering documents.

### IPF's and SPF's Offering Documents

13. FEATHERS, through SBCC, sent prospective investors offering materials for the Funds: typically, an offering circular for IPF, and a private placement memorandum for SPF (collectively, the

1  "Offering Documents"). The Offering Documents for IPF and SPF were updated and re-issued
2  generally on an annual basis.

3      14.    **The IPF Offering Circulars.** IPF issued and provided offering circulars to prospective
4  investors, four of which were issued in 2009, 2010, and 2011. FEATHERS reviewed and approved the
5  IPF offering circulars before they were distributed to prospective investors. The IPF Offering Circulars
6  contained substantially similar offering terms. In general, IPF would make or purchase loans secured by
7  first deeds of trust on commercial and income-producing residential real estate. Investors were to
8  receive monthly a "Member Preferred Return" of the greater of 7.5%, or the prime rate, on their
9  investments. Investors were offered the option to receive their Member Preferred Return as a monthly
10 cash distribution from income from Fund operations, or to allow their proportionate share of Fund
11 income to compound and be reinvested by the Fund for their accounts.

12     15.    The 2009 Offering Circular for IPF stated: "Fund profits will first be allocated entirely to
13 the Members each year up to the amount of the Member Preferred Return, which is the greater of 7.5%
14 per annum or the prime rate, which is adjusted monthly. Any profits exceeding the Member Preferred
15 Return may be retained by the Manager." Substantially similar and/or identical representations were
16 made in IPF's 2010 Offering Circular, 1/2011 Offering Circular, and 6/2011 Offering Circular.

17     16.    **SPF Private Placement Memoranda.** SPF issued and provided private placement
18 memoranda to prospective investors, in 2007, 2009, and 2011. The SPF Private Placement Memoranda
19 contained substantially similar terms as those offered by IPF. In general, SPF would make or purchase
20 loans secured by first and seconds deeds of trust on commercial and income-producing residential real
21 estate. Investors were to receive monthly "Member Return" on their investment of the greater of the
22 prime rate plus 1.5%, or 7.5% per year. As with IPF, investors in SPF were offered the option to receive
23 their Member Return as a monthly cash distribution of income from Fund operations, or to allow their
24 proportionate share of Fund income to be reinvested for their accounts.

25     17.    The SPF Private Placement Memoranda contained substantially similar representations as
26 those in the IPF Offering Circulars. The 2007 PPM stated, in pertinent part: "Members are entitled to a
27 preferred return on their investment at a simple annual rate equal to the greater of (a) the Prime Rate
28 plus 1.5%, or (b) 7.5% per annum. All profits of the Fund exceeding the Member Return shall be

INDICTMENT                                        3

retained by the Manager." Substantially identical representations were made in SPF's 2009 PPM and 2011 PPM. The SPF Private Placement Memoranda contained substantially similar representations that investor returns would be paid from profits as the representations in the IPF offering circulars.

18. FEATHERS and SBCC represented to investors, among other things, that the monies deposited with the Funds would be used only according to the Offering Documents and would not be used to fund the operations of SBCC.

19. FEATHERS and SBCC also advised investors, among other things, that the monies generated from the investments would provide the Funds with sufficient capital for operations and that investors would be paid up to the rate of return, before any profits would accrue to SBCC and FEATHERS.

20. FEATHERS and SBCC transmitted, via the United States Mail, periodic account statements to investors in the Funds that recorded the status of prior investments in one of the Funds and any accrued interest, or, if the investor so chose, a disbursement of all or portions of the gains to date, at the discretion of the investor. This accrued interest or disbursement was represented by SBCC as the profits stemming from positive performance of the particular Fund, as of the date of the statement.

21. FEATHERS and SBCC also transmitted, via United States Mail, electronic mail, and hand delivery, updates to investors about the business operations of SBCC and the Funds generally, as well as opportunities to invest additional monies into one or both of the Funds.

### The Scheme to Defraud

22. Beginning in or about January 2009 and continuing through at least in or about June 2012, FEATHERS knowingly devised a material scheme and artifice to defraud investors in connection with the purchase or sale of securities, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and by omitting and concealing material facts.

23. FEATHERS obtained more than $50 million from investors for the stated purpose of entering into investments in the Funds operated by SBCC. FEATHERS and SBCC represented to prospective investors that the Funds would pay "Member Returns" of at least 7.5% from profits generated by the Funds' mortgage loan portfolios. Contrary to those representations, since at least 2010 for IPF and since 2011 for SPF, Feathers and SBCC paid returns to investors in excess of net profits of

INDICTMENT 4

the Funds, a "Ponzi" scheme in which the returns were partially funded with money from new investors.

24. FEATHERS and SBCC also represented to investors that the Funds had conservative lending standards, were generally prohibited from making loans to SBCC, and that the Funds' loans were secured, performing, and current. In reality, and contrary to these representations, beginning as early as approximately 2007, and no later than around 2009, and continuing through 2012, FEATHERS and SBCC caused the Funds to transfer over $7 million to SBCC, and improperly to record a majority of these transfers as receivables due from SBCC. SBCC, at the direction of FEATHERS, used the money to pay its operating expenses, including FEATHERS and his companies. FEATHERS and SBCC's disclosures to investors were false and misleading, because they failed to disclose that:

    a. FEATHERS and SBCC had improperly taken over $7 million from the Funds in loans and management fees;

    b. FEATHERS and SBCC had caused the Funds to record the amounts loaned as assets in the form of receivables;

    c. the receivables that were recorded were, in reality, unsecured loans;

    d. SBCC borrowed additional money from IPF to make interest payments on these receivables; and,

    e. the Funds were not able to assess the collectability of these receivables.

Moreover, by recording these transfers as receivables on the Funds' financial statements, FEATHERS and SBCC concealed that the money was being used to pay SBCC's operating expenses rather than to invest in mortgage loans, as represented in the Offering Documents and promised to the Funds' investors.

25. FEATHERS and SBCC owed a fiduciary duty to the Funds' investors, but FEATHERS and SBCC failed to disclose the significant conflicts of interest arising from causing the Funds to transfer over $7 million to SBCC so it could pay its expenses, and recording a majority these transfers as assets of the Funds. Moreover, in the first quarter of 2012, FEATHERS and SBCC caused SPF to sell mortgage loans to IPF at substantial premiums over the outstanding balance of the loans, and then caused SPF to use the premiums to pay management fees to SBCC. FEATHERS and SBCC failed to disclose these inter-company transactions, at inflated prices, designed solely to funnel investor funds to FEATHERS and SBCC.

INDICTMENT      5

26. In addition to these misrepresentations and omissions in the Offering Documents, during 2010 and 2011 Feathers and SBCC sent regular newsletters to investors in IPF and SPF. In those newsletters, FEATHERS and SBCC regularly made statements reassuring investors that the funds were making loans secured by first and second deeds of trust and that all loans were performing. In reality, the Funds had unsecured loans to SBCC, these loans were not generating returns, and the Funds themselves were not generating returns as represented in the Offering Documents or the subsequent account statements transmitted to investors.

27. As of approximately June 2012, as a result of their fraudulent scheme, as FEATHERS well knew, SBCC held unsecured loans in excess of $5.5 million owed to the Funds, had made "Ponzi" payments intended to lull investors into a false sense of security by creating the appearance that the Funds were engaging in successful debt financing agreements and otherwise acting to preserve and increase the investors' monies, and, in the process, had diverted approximately $2 million dollars to the personal benefit of FEATHERS and members of his family as well as other unauthorized expenditures.

COUNTS ONE TO SEVENTEEN: 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 (Securities Fraud)

28. The factual allegations of paragraphs 1 through 27 are realleged as if fully set forth herein.

29. On or about the dates set forth below, in the Northern District of California and elsewhere, the defendant,

MARK FEATHERS,

willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, and aided and abetted others in using and employing manipulative and deceptive devices and contrivances, in contravention of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2, by (A) employing devices, schemes and artifices to defraud; (B) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (C) engaging in acts, practices and

INDICTMENT 6

courses of business which operated and would operate as a fraud and deceit upon persons, to wit, used and caused others to use the means and instrumentalities of interstate commerce, the mails, and the wires in the manner, on or about the dates, set forth below:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| 1 | 11/13/2009 | ST Investment of $200,000 into IPF |
| 2 | 3/24/2010 | RM Investment of $50,000 into SPF |
| 3 | 3/24/2010 | JP Investment of $100,000 into IPF |
| 4 | 6/3/2010 | SW Investment of $50,000 into IPF |
| 5 | 12/24/2010 | JP Investment of $60,647.67 into IPF |
| 6 | 1/26/2011 | RG Investment of $50,000 into IPF |
| 7 | 3/9/2011 | SW Investment of $100,000 into IPF |
| 8 | 6/27/2011 | SW Investment of $50,000 into SPF |
| 9 | 8/3/2011 | RG Investment of $20,000 into IPF |
| 10 | 9/9/2011 | RG Investment of $100,000 into SPF |
| 11 | 11/7/2011 | ST Investment of $200,000 into SPF |
| 12 | 11/8/2011 | SW Investment of $50,000 into SPF |
| 13 | 1/4/2012 | AS Investment of $50,000 into IPF |
| 14 | 2/7/2012 | RM Investment of $80,000 into SPF |
| 15 | 2/17/2012 | AS Investment of $100,000 into IPF |
| 16 | 3/9/2012 | ST Investment of $250,000 into IPF |
| 17 | 3/9/2012 | PB Investment of $99,740.42 into IPF |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

COUNTS EIGHTEEN TO TWENTY-NINE:  18 U.S.C. § 1341 (Mail Fraud)

30.   The factual allegations of paragraphs 1 through 27 are realleged as if fully set forth herein.

INDICTMENT                                                        7

1  31. On or about the dates set forth below, in the Northern District of California and
2  elsewhere, the defendant,

3                                MARK FEATHERS,

4  having devised and intending to devise a material scheme and artifice to defraud, and for obtaining
5  money and property by means of materially false or fraudulent pretenses, representations, and promises,
6  for the purpose of executing such scheme and artifice and attempting to do so, placed in a post office
7  and authorized depository for mail matter, matters and things to be sent and delivered by the Postal
8  Service, and deposited and caused to be deposited matters and things sent and delivered by private or
9  commercial interstate carrier, and took and received therefrom, such matters and things, and knowingly
10 caused to be delivered by mail and such carrier according to the direction thereon, and at the place at
11 which it is directed to be delivered by the person to whom it is addressed, such matters and things, in
12 violation of Title 18, United States Code, Section 1341, specifically:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| 18 | 6/1/2010 | SBCC Newsletter to JP |
| 19 | 7/21/2010 | SBCC Newsletter to JP |
| 20 | 8/11/2010 | SBCC Newsletter to JP |
| 21 | 12/1/2010 | IPF Account Statement to JP |
| 22 | 2/10/2011 | IPF Account Statement to SW |
| 23 | 7/1/2011 | IPF Account Statement to RG |
| 24 | 9/2011 | SBCC Newsletter to JP |
| 25 | 9/1/2011 | SPF Account Statement to SW |
| 26 | 10/2011 | SBCC Newsletter to JP |
| 27 | 11/1/2011 | SPF Account Statement to ST |
| 28 | 12/1/2011 | SPF Account Statement to RM |
| 29 | 3/2/2012 | IPF Account Statement to ST |

Each in violation of Title 18, United States Code, Section 1341.

<u>FORFEITURE ALLEGATION</u>: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 – Forfeiture of Fraud Proceeds)

32. The allegations of Counts One through Twenty-nine of this Indictment are re-alleged and incorporated herein pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

33. Upon a conviction for Count One through Twenty-Nine, alleged above, the defendant,

MARK FEATHERS,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said offense, including but not limited to a sum of money equal to the total proceeds from the commission of said offense.

34. If, as a result of any act or omission of the defendant, any of said property

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to or deposited with, a third person;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty;

any and all interest defendant has in any other property, up to the value of the property described in paragraph 33 above, shall be forfeited to the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461.

////
////
////
////
////
////
////
////
////

INDICTMENT    9

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 1343, 1349; Title 28, United States Code, Section 2461; and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: 10/29/14

A TRUE BILL

_____
FOREPERSON

MELINDA HAAG
United States Attorney

_____
J. DOUGLAS WILSON
Chief, Criminal Division

Approved as to form:

_____
TIMOTHY J. LUCEY
Assistant United States Attorney

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

SEALED BY ORDER OF COURT

Filed OCT 29 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## OFFENSE CHARGED

COUNTS ONE TO SEVENTEEN: 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 (Securities Fraud)

COUNTS EIGHTEEN TO TWENTY-NINE: 18 U.S.C. § 1341 (Mail Fraud)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: COUNTS ONE TO SEVENTEEN: Up to 30 years imprisonment, a fine of up to $1 million or twice the amount of gain or loss, whichever is greater, five years of supervised release, and $100 special assessment.
COUNTS EIGHTEEN TO TWENTY-NINE: 20 years imprisonment, $250,000 fine or twice the amount of gain or loss, three years of supervised release, and $100 special assessment.

### DEFENDANT - U.S
▶ MARK FEATHERS

DISTRICT COURT NUMBER
CR 14 00531 RMW

PSG

## PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)
S/A Cameron Purves - FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form  MELINDA HAAG
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  TIMOTHY J. LUCEY

### DEFENDANT

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge
5) ☐ On another conviction  } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No  } If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT    Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time:                Before Judge:

Comments: