1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

United States District Court
Northern District of California

12    UNITED STATES OF AMERICA,                Case No. 14-CR-00531-LHK

13                        Plaintiff,           **ORDER DENYING MOTION TO**
                                               **RELEASE FUNDS AND GRANTING IN**
14              v.                             **PART AND DENYING IN PART**
                                               **MOTION TO COMPEL DISCOVERY**
15    MARK FEATHERS,
                                               Re: Dkt. Nos. 65, 66
16                        Defendant.

17

18          Before the Court are Defendant Mark Feathers' ("Defendant's") Motion for Release of

19    Funds, ECF No. 66 ("Fund Mot."), and Motion to Compel Discovery, ECF No. 65 ("Discovery

20    Mot.").  Having considered the parties' briefing, the transcript of the motions hearing before

21    United States District Judge Ronald M. Whyte, the parties' arguments at the December 14, 2016

22    hearing, the relevant law, and the record in this case, the Court DENIES Defendant's Motion for

23    Release of Funds and GRANTS IN PART and DENIES IN PART Defendant's Motion to Compel

24    Discovery.

25    I.    **BACKGROUND**

26          A.    **Factual Background**

27                                             1

On October 29, 2014, a federal grand jury indicted Defendant on 17 counts of securities fraud in violation of 15 U.S.C. §§ 17j(b) and 78ff and 17 C.F.R. § 240.10b-5, and on 12 counts of mail fraud in violation of 18 U.S.C. § 1341.  ECF No. 1 ("Indictment").  Defendant founded Small Business Capital Corporation ("Capital") as a privately-held California corporation in 2004, with its principal place of business in Los Altos, California.  *Id.* ¶ 1–2.  Defendant was CEO and Director of Capital.  *Id.* ¶ 2.  Capital managed two investment funds: Investors Prime Fund, LLC ("Prime Fund"), and SBC Portfolio Fund, LLC ("SBC Fund") (collectively, the "Funds").  *Id.* ¶ 3.

Prime Fund and SBC Fund were both California limited liability companies with their primary places of business in Los Altos, California.  *Id.* ¶ 4–5.  Prime Fund was formed by Defendant in May 2005, and SBC Fund was formed by Defendant in July 2007.  *Id.* ¶ 4, 5.  Both Funds invested in loans secured by first deeds of trust on commercial and income-producing residential real estate located in California and other states.  *Id.*

Capital was the sole manager of Prime Fund and SBC Fund.  *Id.*  Under Capital's operating agreement with Prime Fund and SBC Fund, Capital owed a fiduciary duty to Prime Fund and SBC Fund.  *Id.* at 10–11.  Defendant and Capital had complete control of Prime Fund and SBC Fund, which included control over the contents of any securities offerings.  *Id.* at 12.

Defendant, through Capital, sent prospective investors offering materials for the Funds.  *Id.* ¶ 13.  As a result, Defendant obtained more than $50 million from investors for the purpose of investing in the Funds.  *Id.* ¶ 23.  According to the Indictment, from January 2009 to June 2012, through these offering materials, Defendant knowingly engaged in a scheme to defraud investors in connection with the purchase or sale of securities, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and by omitting and concealing material facts.  *Id.* ¶ 22.

First, the Indictment alleges that Defendant and Capital represented to prospective investors that the Funds would pay "Member Returns" of at least 7.5%, which are taken out of the profits generated by the Funds' portfolios.  However, Defendant and Capital have, since 2010 for

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

1    Prime Fund, and since 2011 for SBC Fund, paid investors returns that exceeded the Funds' net

2    profits.  *Id.* at 23.  Those payments were partially funded with money from new investors in a

3    "Ponzi" scheme.  *Id.*

4        Second, the Indictment alleges that Defendant and Capital represented to investors that the

5    Funds had conservative lending standards, were generally prohibited from making loans to

6    Capital, and that the Funds' loans were secured, performing, and current.  *Id.* at 24.  However,

7    from 2007 or 2009 through 2012, Defendant and Capital transferred over $7 million to Capital,

8    and improperly recorded most of these transfers as "receivables" to be paid by Capital or as

9    management fees.  *Id.*  Capital used the money to pay its operating expenses.  *Id.*

10       Allegedly these actions made the offering statements false or misleading because they

11   failed to disclose that (1) over $7 million were improperly transferred to Capital as loans and

12   management fees, (2) the Funds recorded the amounts loaned as assets in the form of receivables,

13   (3) the receivables were actually unsecured loans, (4) Capital borrowed additional money from

14   Prime Fund to make interest payments on those receivables, and (5) the Funds were unable to

15   collect on these receivables.  *Id.*  Additionally, the Indictment alleges that, by recording these

16   transfers as receivables, Defendant and Capital concealed that the money was being used to pay

17   operating expenses rather than to invest in mortgage loans.  *Id.*  Allegedly, Defendant and Capital,

18   in violation of their fiduciary duty to the Funds' investors, failed to disclose the conflict of interest

19   that arose due to the money transfers to Capital.  *Id.* ¶ 25.

20       Third, the Indictment alleges that Defendant and Capital, in 2012, caused SBC Fund to sell

21   mortgage loans to Prime Fund at substantial premiums over the outstanding balance of the loans.

22   *Id.*  Defendant and Capital then paid capital the excess amount paid from SBC Fund to Prime

23   Fund as management fees.  *Id.*  Defendant and Capital did not disclose these inter-company

24   transactions to investors.  *Id.*

25       In addition to the offering materials, the Indictment alleges that in 2010 and 2011,

26   Defendant and Capital sent regular newsletters to the Funds' investors.  *Id.* ¶ 26.  Those

27
                                           3
28   ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
     MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

newsletters informed investors that the Funds were making loans secured by first and second deeds of trust and that all loans were performing.  *Id.*  The Indictment alleges those statements were false because the Funds provided unsecured loans to Capital, the loans were not generating returns, and the Funds were not generating the returns represented in the offering documents or in subsequent account statements sent to investors.  *Id.*

As of June 2012, the Indictment alleges that Capital owed $5.5 million in unsecured loans to the Funds, had made "Ponzi" payments to investors to make it seem like the Funds were performing, and had diverted $2 million to Defendant and his family.  *Id.* ¶ 27.

**B.    Procedural History**

Based on the above facts, the Securities Exchange Commission ("SEC"), on June 21, 2012, brought a civil enforcement action against Defendant, Capital, and the Funds.  *See* N.D. Cal. Case No. 5:12-CV-3237-EJD ("Civil Case") ECF No. 1.  Judge Edward Davila presided over the case. The Court first discusses the procedural history of the civil case and then discusses the procedural history of the instant criminal case.

**1.    Procedural History of the Civil Case**

The Complaint against Defendant, Capital, and the Funds alleged four causes of action: (1) fraud in the offer or sale of securities in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"); (2) fraud in connection with the purchase or sale of securities in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder; (3) violation of Section 15(a) of the Exchange Act (unregistered broker-dealer); and (4) controlling person liability under Section 20(a) of the Exchange Act.  *Id.*

On June 26, 2012, the Court issued a temporary restraining order that froze the assets of Defendant, Capital, and the Funds.  Civil Case ECF No. 16.  On July 3, 2012, while represented by counsel, Defendant consented to the entry of a preliminary injunction and the appointment of a permanent receiver over Capital and the Funds.  Civil Case ECF No. 29.

4

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

On July 10, 2012, with Defendant's consent, the Court issued a preliminary injunction (1) freezing assets; (2) prohibiting destruction of documents; (3) requiring accountings; and (4) appointing a permanent receiver.  Civil Case ECF No. 34.  In the preliminary injunction order, the Court ordered an immediate freeze on the assets of Defendant, Capital, and the Funds.  *See id.*  The preliminary injunction order also appointed Thomas A. Seaman (the "Receiver") as permanent receiver of the Funds and granted him "full power over all funds, assets, collateral, premises" as equity receiver of the defendant companies Capital, Prime Fund, and SBC Fund.  *Id.*  The Receiver was authorized to employ the law firm of Allen Matkins, Leck, Gamble, Mallory & Natsis, LLP as his general counsel on July 10, 2012.  Civil Case ECF No. 36.

On July 27, 2012, the Court granted a stipulation for the release of some of Defendant's personal assets to pay reasonable living expenses.  Civil Case ECF No. 46.  On October 17, 2012, the Court granted a second stipulation releasing additional personal assets from the asset freeze to pay personal living expenses.  Civil Case ECF No. 80.

On August 3, 2012, Defendant sought, through counsel, "limited use of his receivership assets to pay for the legal defense in this matter."  Civil Case ECF No. 48.  Defendant sought release of the assets on the grounds that (1) he owned an "independently documented equity stake in the company of at least $550,000," and (2) the Funds' operating agreements "contained an express indemnity to Mr. Feathers from the Funds for all civil proceedings against him."  Civil Case ECF No. 48 at 2.  The indemnity agreement was as follows:

> The Manager and its agents or Affiliates and the shareholders, officers, directors . . . of the Company shall be entitled to be indemnified and held harmless by the Company, at the expense of the Company, against any loss, expense, claim or liability (***including reasonable attorneys' fees, which shall be paid as incurred***) resulting from the assertion of any claim or legal proceeding relating to the performance or nonperformance of any act concerning the activities of the Company, including claims or legal proceedings brought by a third party or by Members, on their own behalf or as a Company derivative suit, ***so long as the party to be indemnified determined in good faith that such course was in the best interest of the Company and did not constitute fraud, bad faith or willful misconduct***; provided that any such indemnity shall be paid solely from the assets of the Company.

5

United States District Court
Northern District of California

Civil Case ECF No. 70 at 8 (emphasis added).  The SEC filed an opposition to Defendant's

request, Civil Case ECF No. 51, and Defendant replied, Civil Case ECF No. 55.  The Court denied

Defendant's request.  Civil Case ECF No. 70.  With respect to the first ground for Defendant's

request, the Court found that Defendant had insufficiently shown that the Funds' assets contained

contributions from Feathers.  *Id.* at 5–6.  With respect to the second ground for Defendant's

request, the Court held "that acts constituting fraud or willful conduct are excluded from the

indemnification—at least until after the final merits of the 'underlying controversy have been

decided."  *Id.* at 11.  The Court reached this result because indemnification was only provided "so

long as . . . [Defendant's actions] did not constitute fraud, bad faith, or willful misconduct."  *Id.* at

10–11.  Based on the indemnity agreement, the Court set aside $200,000 to reimburse Defendant

for his legal fees should he prevail in the civil case.  *Id.*

On April 13, 2013, Defendant filed, *pro se*, a Motion for Court Approval of Awarding of

Legal Fees Paid for Pro Se Defendant Mark Feathers.  Civil Case ECF No. 457.  On May 10,

2013, the Court denied the motion.  Civil Case ECF No. 457.  On May 29, 2013, Defendant filed a

Request for Leave to the Court to Refile a Motion, Based Upon New Facts and Evidence, for

Court Approval of Awarding of Legal Fees to Pro Se Defendant Mark Feathers.  Civil Case ECF

No. 497.  On June 7, 2013, the Court denied the request.  Civil Case ECF No. 510.

On May 13, 2013, Defendant filed a motion for summary judgment.  Civil Case ECF Nos.

459, 461, 462.  On May 28, 2013, the SEC responded, Civil Case ECF No. 486, and on June 4,

2013, Defendant replied, Civil Case ECF No. 502.

On May 23, 2013, the SEC filed a motion for summary judgment.  Civil Case ECF No.

477.  On June 6, 2013, Defendant responded, Civil Case ECF No. 511, and on June 13, 2013, the

SEC replied, Civil Case ECF No. 537.

On August 16, 2013, the Court denied Defendant's motion for summary judgment and

granted the SEC's motion for summary judgment.  Civil Case ECF No. 591.

On August 29, 2013, Defendant filed a notice of appeal before final judgment was entered

6

in the case.  Civil Case ECF Nos. 593–94.  On October 23, 2013, the Ninth Circuit dismissed for lack of jurisdiction.  Civil Case ECF No. 620.

On November 6, 2013, the court issued a permanent injunction that enjoined Defendant from further violations of the securities laws, ordered Defendant to disgorge $7,782,961.07 wrongfully obtained profits and prejudgment interest, and ordered Defendant to pay a civil penalty of $10,000.  Civil Case ECF No. 622.  On November 7, 2013, Defendant timely appealed.  Civil Case ECF Nos. 623, 625.  The case is still pending before the Ninth Circuit as case number 13-17304.

On November 15, 2013, the Receiver filed a Motion to Approve Omnibus and Specific Claim Objections.  Civil Case ECF No. 626.  In that Motion, the Receiver objected to claims made on the receivership by various entities, including Defendant's claim for $500,000 of "paid in capital."  *Id.* at 7.  The Receiver objected to Defendant's claim because the Court had held, on summary judgment, that Defendant and Capital had committed securities fraud, Capital had unlawfully operated as an unregistered broker-dealer, and Defendant was liable for $7.782 million in disgorgement and $10,000 in civil penalties.  *Id.*  Defendant filed a response on December 2, 2013 in which Defendant largely alleged bad faith on the part of the SEC and the Receiver.  Civil Case ECF No. 637.  The Receiver replied on December 6, 2013, but did not address Defendant's arguments.  Civil Case ECF No. 655.  The Court granted the Receiver's Motion on February 25, 2014, Civil Case ECF No. 710, and filed an Amended Order still granting the Motion on February 26, 2014, Civil Case ECF No. 714.  Defendant appealed on February 27, 2014.  Civil Case ECF No. 719.  The case is still pending before the Ninth Circuit as case number 14-15466.

On August 15, 2014, Defendant moved for relief from the summary judgment order under Federal Rule of Civil Procedure 60(b).  Civil Case ECF No. 940.  On November 10, 2014, the Court denied the motion for lack of jurisdiction based on the pendency of the appeal before the Ninth Circuit and indicated that the Court would not be willing to entertain such a motion.  Civil Case ECF No. 974.  Defendant brought a motion before the Ninth Circuit "to allow a motion

7

1    hearing with the trial court to set aside its judgment under Fed. R. Civ. P. 60(b)."  Ninth Circuit

2    Court of Appeals, Case No. 13-17304, ECF No. 41.  The Ninth Circuit denied the motion because

3    the trial court already held it would not be willing to entertain such a motion.  *Id.* ECF No. 42.

### 2.     Procedural History of the Instant Criminal Case

5           On October 29, 2014, a federal grand jury returned the 29 count indictment against

6    Defendant.  ECF No. 1.  The case was assigned to United States District Court Judge Ronald M.

7    Whyte.  Defendant appeared on November 12, 2014, and pled not guilty.  ECF No. 3.  Judge

8    Davila declined to relate the civil and criminal cases.  ECF No. 89, Hearing of Transcript before

9    Judge Whyte ("Hearing Tr.") at 7.

10          On August 19, 2016, the Court granted Defendant's Motion to File an Oversized Brief

11   with respect to the instant Motion for Release of Funds.  ECF No. 64.

12          On August 22, 2016, Defendant filed his Motion for Release of Funds and Motion to

13   Compel Discovery.  ECF No. 65 ("Discovery Mot."), 66 ("Fund Mot.").  On September 19, 2016,

14   the U.S. Attorney's Office filed oppositions to both of Defendant's motions.  ECF No. 71 ("Fund

15   Opp'n"), 72 ("Discovery Opp'n").  Defendant filed replies in support of both motions on

16   September 27, 2016.  ECF No. 75 ("Fund Reply"), 76 ("Discovery Reply").

17          On October 5, 2016, a hearing was held on the instant motions before District Judge

18   Ronald Whyte.  ECF No. 77.  After Judge Whyte's retirement on October 31, 2016, the case was

19   reassigned to Judge Edward Davila on November 3, 2016.  ECF No. 82.  On November 7, 2016,

20   Judge Davila recused himself, ECF No. 84, and the case was reassigned to the undersigned judge,

21   ECF No. 85.

22          On December 14, 2016, a status conference and hearing on the instant motions were held.

23   ECF No 90.

## II.     MOTION FOR RELEASE OF FUNDS

25          Defendant seeks the release of the $200,000 that was set aside to reimburse Defendant for

26   legal fees in the event that he prevailed in the civil case.  The Court first discusses the relevant

8

27
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
28   MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

1   standards under the Sixth Amendment, and then discusses the parties' arguments.

2       **A.    Sixth Amendment Right to Counsel and Forfeiture of Assets**

3       The Sixth Amendment provides criminal defendants the right "to have the Assistance of

4   Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has held that

5   the right to counsel is "fundamental." *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016). As

6   part of this fundamental right, "the [United States Supreme] Court has held that the Sixth

7   Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice.'" *Id.*

8   (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, this "fair opportunity" for

9   counsel of choice is not unlimited. *Id.* For example, a criminal defendant has no right "to an

10  attorney who is not a member of the bar, or who has a conflict of interest due to a relationship with

11  an opposing party." *Id.* (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)).

12      Moreover, an indigent defendant has a right to adequate representation, but "has no right to

13  have the Government pay for his preferred representational choice." *Id.* (citing *Caplin &*

14  *Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). The right to counsel of choice

15  "does not go beyond 'the individual's right to spend his *own* money to obtain the advice and

16  assistance of . . . counsel.'" *Caplin & Drysdale*, 491 U.S. at 626 (emphasis added). "A defendant

17  has no Sixth Amendment right to spend another person's money for services rendered by an

18  attorney, even if those funds are the only way that that defendant will be able to retain the attorney

19  of his choice." *Id.*

20      Thus, "the Government does not violate the Sixth Amendment if it seizes the robbery

21  proceeds and refuses to permit the defendant to use them to pay for his defense." *Id.* Criminal

22  forfeiture statutes transfer title of unlawfully obtained property to the government at the time of

23  the crime. *See* 21 U.S.C. § 853(c) (transferring title to property fairly traceable to a felony). The

24  United States Supreme Court has held that the government can freeze assets under such forfeiture

25  statutes without violating the Sixth Amendment at the start of a criminal case if the government

26  provides probable cause that the assets were unlawfully obtained. *United States v. Monsanto*, 491

27  9

28  ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
    MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

1    U.S. 600, 615–16 (1989) ("[I]t would be odd to conclude that the Government may not restrain

2    property . . . based on a finding of probable cause, when we have held that (under appropriate

3    circumstances), the Government may restrain persons where there is a finding of probable

4    cause . . . .").  Recently, the United States Supreme Court held that the assets must be "fairly

5    traceable" to the crime.  Even with a showing of probable cause, the government can only seize

6    assets that are "fairly traceable" to the criminal activity, and not other assets that the defendant

7    owns "free and clear." *Luis*, 136 S. Ct. at 1095 (drawing a line that "distinguishes between a

8    criminal defendant's (1) tainted funds and (2) innocent funds needed to pay for counsel.").

9         To determine whether there is probable cause, courts generally hold a hearing.  *See United*

10   *States v. Unimex, Inc.*, 991 F.2d 546, 550 (9th Cir. 1993) (noting that a hearing should be provided

11   on issues of forfeiture if a criminal defendant may be deprived right to counsel).  In such hearings,

12   the government has the burden to show probable cause.  *Monsanto*, 491 U.S. at 615 (applying the

13   same probable cause standard in arrests to seized assets).  Lower courts have also held that

14   *Monsanto*'s probable cause requirement also applies in civil forfeiture proceedings if the

15   defendant requests the assets to pay an attorney in a pending criminal case.  *Fed. Trade Comm'n v.*

16   *Johnson*, 2015 WL 8751693, at *3 (D. Nev. Dec. 14, 2015) ("There has never been a

17   determination of probable cause linking the assets held in the receivership estate with the offenses

18   in the Criminal Case, and such a probable cause analysis was a key part of the Supreme Court's

19   reasoning in *Monsanto*."); *Commodity Futures Trading Comm'n v. Walsh*, 2010 WL 882875, at *2

20   (S.D.N.Y. Mar. 9, 2010) (applying the *Monsanto* probable cause analysis to a civil proceeding

21   where a criminal proceeding was also pending).

22        **B.**      **The Instant Case and the Parties' Arguments**

23        Here, as discussed above, the SEC brought a civil case against Defendant for his fraudulent

24   activity.  In the civil case, Defendant attempted to obtain the release of the Funds' frozen assets

25   because he alleged that (1) he owned a portion of the assets held in receivership, (2) the assets

26   were not associated with fraud, and (3) he should be indemnified for legal costs under an

10

United States District Court
Northern District of California

United States District Court
Northern District of California

indemnification provision.  Civil Case ECF No. 48.  In preliminary proceedings, Judge Davila rejected all of Defendant's arguments.  Civil Case ECF No. 70.  Judge Davila eventually granted summary judgment in favor of the SEC on all of the claims of fraud in the Complaint.  Civil Case ECF No. 591.  After summary judgment was entered, Judge Davila approved the Receiver's plan to subordinate Defendant's claims to the assets in the Funds to other investors.  Civil Case ECF No. 714.

In the instant Motion, Defendant argues that despite the civil judgment against Defendant finding fraud, the Sixth Amendment requires the release of assets.  Defendant's basic theory is that because the instant criminal case was not pending at the time of the civil proceedings, and because the Sixth Amendment issue was never considered in the civil case, the Court can disregard the civil court's findings.  Fund Mot. at 16–17 ("Because Mr. Feathers has a Sixth Amendment right to a determination of whether he is entitled to release of funds, the civil order cannot [] bar Mr. Feathers from filing this motion, and cannot be relied upon to determine the merits of the motion.").

Specifically, Defendant argues that the key decisions in the civil case were wrongly decided.  Defendant first argues that the decision on summary judgment in the civil case was wrongly decided.  *Id.* at 17–28.  Second, Defendant argues that Judge Davila was wrong to refuse to release assets to Defendant in the civil proceedings because (1) Defendant had made stock purchases totaling approximately $688,000 in equity, (2) Judge Davila wrongly relied on Judge Davila's prior finding that a *prima facie* case had been established to freeze the Funds' assets, and (3) Judge Davila incorrectly interpreted the Funds' indemnification provision.  *Id.* at 28–35.  Defendant has cabined his request solely to the $200,000 that Judge Davila set aside for use if Defendant had prevailed on his civil fraud claims, as that money is still held by the Receiver.  Civil Case ECF No. 1164.

In response, the U.S. Attorney's Office argues that Defendant (1) has no standing to move for the release of assets in the criminal case, (2) the Court has no jurisdiction to overturn the civil

11

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

1    judgment because it is currently on appeal, (3) Defendant's motion is precluded on the doctrine of

2    *res judicata*, and (4) Defendant's motion is precluded on the doctrine of collateral estoppel.  Fund

3    Opp'n at 14–25.  Defendant's reply asserts that Defendant is not seeking to overturn the civil

4    judgment, but rather to litigate the Sixth Amendment issue for the first time.  Defendant also

5    argues that it is inappropriate to apply collateral estoppel in criminal proceedings.

6        **C.    Analysis**

7        The Court first discusses whether it has jurisdiction.  The Court need not reach the other

8    arguments raised by the U.S. Attorney's Office concerning standing, *res judicata*, or collateral

9    estoppel because, as discussed below, the Court finds that it does not have jurisdiction.

10       To discuss the issue of jurisdiction, the Court first discusses the elements of the Sixth

11   Amendment claim and the substance of Judge Davila's decision in the civil case, and then turns to

12   how the resolution of those issues affects jurisdiction.  Defendant only potentially has a Sixth

13   Amendment right to the release of assets from the receivership if (1) Defendant owns the assets at

14   issue, or (2) has a right of indemnification.  *See Caplin & Drysdale*, 491 U.S. at 626 ("A defendant

15   has no Sixth Amendment right to spend another person's money for services rendered by an

16   attorney."); *S.E.C. v. FTC Capital Markets, Inc.*, 2010 WL 2652405, at *4 (S.D.N.Y. June 30,

17   2010) (finding that the Sixth Amendment is implicated where the Defendant owns the assets or

18   has a legal right to an advancement of assets for a defense under a valid indemnification

19   agreement).

20       In preliminary proceedings, Judge Davila found that Defendant had no ownership interest

21   in the Funds and that Defendant did not have a right to indemnification unless it was determined

22   he had not committed fraud.  Civil Case ECF No. 70.  Thus, Judge Davila ordered that $200,000

23   be set aside for reimbursement if Defendant prevailed in the civil case.  *Id.*  Later, Judge Davila

24   held on summary judgment that Defendant had committed civil fraud and granted the Receiver's

25   request to subordinate Defendant's claim to the Funds to other Fund investors.  *See* Civil Case

26   ECF Nos. 591, 715.  Thus, Judge Davila has made rulings on (1) who owns the assets in the

12

United States District Court
Northern District of California

United States District Court
Northern District of California

1 Funds, and (2) whether Defendant has a valid right of indemnification from the Funds—the very

2 issues that form the basis of Defendant's Sixth Amendment claim.

3      The Court first discusses whether the pending appeals in the civil case divest this Court of

4 jurisdiction, and then discusses whether this Court can alter the final judgment of another district

5 court.

6      A valid notice of appeal divests a district court of jurisdiction "over those aspects of the

7 case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58

8 (1982); *United States v. Vroman*, 997 F.2d 627, 627 (9th Cir. 1993) (per curiam) (holding that the

9 "filing of notice of appeal divests the district court of its control over the aspects of the case

10 involved in the appeal"). Defendant currently has filed multiple appeals in the civil case that are

11 currently pending before the Ninth Circuit. Ninth Circuit Court of Appeals, Case Nos. 13-17304,

12 14-15466. Through these appeals, Defendant is challenging the final judgment entered after Judge

13 Davila issued the order granting summary judgment as well as Judge Davila's order approving the

14 subordination of Defendant's claim to the assets in the Funds to other investors. Civil Case ECF

15 Nos. 623, 719.

16      Due to the pendency of Defendant's appeals, Judge Davila and this Court are divested of

17 jurisdiction to reconsider whether Defendant owns the assets in the receivership or whether they

18 are covered by the indemnification agreement because both issues were decided by Judge Davila

19 before final judgment. *See* Civil Case ECF No. 70, 591. This lack of jurisdiction is confirmed by

20 Defendant's failed prior attempt, on August 15, 2014, to move for reconsideration of the final

21 judgment before Judge Davila. Civil Case ECF No. 940. That motion was denied for lack of

22 jurisdiction on November 10, 2014. Civil Case ECF No. 974. Defendant then brought a motion

23 before the Ninth Circuit "to allow a motion hearing with the trial court to set aside its judgment

24 under Fed. R. Civ. P. 60(b)." Ninth Circuit Court of Appeals, Case No. 13-17304, ECF No. 41.

25 The Ninth Circuit denied the motion as moot because Judge Davila had held that he would not be

26 willing to entertain such a motion. *Id.* ECF No. 42. Thus, because the appeal is still currently

27                                         13

pending before the Ninth Circuit, this Court also lacks jurisdiction.

Defendant argues that the instant Motion involves the Sixth Amendment, an issue that is not on appeal because it was not at issue in the civil case.  However, as discussed above, Defendant only has a potential Sixth Amendment right to the assets if Defendant owns the assets at issue or has a right of indemnification.  *See Caplin & Drysdale*, 491 U.S. at 626 (requiring ownership of assets); *FTC Capital Markets, Inc.*, 2010 WL 2652405 at *4 (finding an indemnification agreement to trigger Sixth Amendment obligations).  Thus, because these two issues are dispositive of the Sixth Amendment issue, they were resolved in the civil case, and the final judgment in the civil case is on appeal, the Court does not have jurisdiction to decide these issues.

In the October 5, 2016 hearing on the instant Motion before Judge Whyte, counsel for Defendant essentially conceded that the instant Motion is an attempt to relitigate and overturn the factual and legal conclusions made by Judge Davila in the order granting summary judgment in the civil case:

> Well, that is exactly what we have gone through very carefully in our motion, to show that, frankly, Judge Davila is wrong.  And we're not trying to overturn his order, because that's not the issue that we're litigating.  And we're not trying to undermine it.  We are simply saying that Judge Davila did not have—well, two things.
> Number one is that he did not have all of the facts to properly consider the summary judgment motion.  And, Number two, is that he misinterpreted the indemnity clause.
> . . . .
> [H]e did not consider, as our expert has pointed out that most of the transfers that the SEC and Judge Davila found were fraudulent were actually disclosed in the audit reports.

Hearing Tr. at 18–19.  In fact, Defendant's counsel concludes by citing to the civil standard for summary judgment: "at the very least, there is certainly an issue of material fact."  *Id.*  Thus, because the factual issues underlying the Sixth Amendment issue are part of the judgment that is on appeal before the Ninth Circuit, this Court is divested of jurisdiction.

Even if the issue were not on appeal, however, the Court would not have jurisdiction to

14

United States District Court
Northern District of California

United States District Court
Northern District of California

1    release the assets held in receivership.  As noted above, Judge Davila preliminarily ordered the

2    assets from the Funds to be kept in the receivership, and ordered that $200,000 be set aside for

3    reimbursement if Defendant prevailed in the civil case.  Civil Case ECF No. 70.  Judge Davila

4    also determined that Defendant did not own the assets in the Funds and did not have a valid right

5    of indemnification from the Funds.  Thus, Judge Davila decided the issues dispositive of the Sixth

6    Amendment question here.  Accordingly, if the Court were to order the release of the assets, the

7    Court would necessarily need to (1) make findings of fact and law that conflict directly with those

8    made by Judge Davila, and (2) issue an order that conflicts with both the order placing the assets

9    in receivership and the final judgment in the civil case.

10        These circumstances are analogous to those in *United States v. Spiegel*, 995 F.2d 138 (9th

11   Cir. 1993).  In *Spiegel*, the Ninth Circuit addressed whether a district court presiding over a

12   criminal case could overturn or modify a prior order of the Office of Thrift Supervision ("OTS")

13   that froze the defendant's assets.  *Id.* at 140.  The Ninth Circuit held that the OTS order could not

14   be overruled or modified through criminal proceedings because, by statute, OTS orders could only

15   be modified through an appeal to a district court, which the defendant had not done.  *Id.*

16        The *Spiegel* defendant argued that the Sixth Amendment should override the statutory

17   jurisdictional requirements, but the Ninth Circuit held that modifying the OTS order was not an

18   available remedy.  *Id.*  The Ninth Circuit reasoned that:

19        Spiegel is in no different a position than any other criminal defendant whose
          assets are tied down by a lien, a prejudgment attachment or a bankruptcy court
20        order. In all such cases, the freezing of defendant's assets may interfere with his
          ability to pay a lawyer; but this does not empower the district court to interfere
21        with the bankruptcy proceeding, or to lift the lien or attachment imposed by
          another court, state or federal.
22

23   *Id.*  If district courts had such power, criminal proceedings would become a forum, under the guise

24   of the Sixth Amendment, to relitigate any civil judgment against the defendant that disposed of the

25   defendant's assets.

26        Here, Defendant requests that this Court take actions to override aspects of the final

27                                              15

28

judgment in the civil proceeding, but does not point to statutory authority for doing so.  Under

*Spiegel*, this Court has no jurisdiction to modify Judge Davila's final judgment.  "It is axiomatic

that one district court has no jurisdiction to review the decision of another district court."  *Pierce v.*

*Obama*, 2014 WL 4959062, at *2 (S.D. Cal. Aug. 20, 2014) (quoting *Marshall v. Managed Care*

*Advisory Grp.*, 452 F. Supp. 2d 792, 793 (N.D. Ohio 2006));  *In re McBryde*, 117 F.3d 208, 223,

225–26 & n.11 (5th Cir. 1997) ("[T]he structure of the federal courts does not allow one judge of a

district court to rule directly on the legality of another district judge's judicial acts or to deny

another district judge his or her lawful jurisdiction.") (citing *Dhalluin v. McKibben*, 682 F. Supp.

1096 (D. Nev. 1988)).

Thus, the Court finds that it does not have jurisdiction to consider the facts underlying the

Sixth Amendment issue or provide Defendant the relief he requests.  Therefore, Defendant's

Motion for Release of Funds is DENIED.[1]

### III.    MOTION TO COMPEL DISCOVERY

Defendant brings the instant Motion to Compel Discovery in order to obtain evidence to

show vindictiveness and an intent to deprive Defendant of a defense on the part of the U.S.

Attorney's Office, the SEC, and the Receiver.  Discovery Mot. at 9–11.

### A.    Background Relevant to the Motion to Compel Discovery

Defendant argues that two aspects of the procedural history of the civil and criminal cases

indicate ill will toward Defendant on the part of the U.S. Attorney's Office, the SEC, and the

Receiver.  First, the SEC initiated the civil case against Defendant by filing a complaint on June

21, 2016, and then sought a temporary restraining order on June 26, 2012.  Civil Case ECF Nos. 1,

16.  This enforcement occurred without first issuing a "Wells Notice."  A Wells Notice informs

---

[1] The Court additionally notes that Defendant's current counsel, Rita Bosworth, is eminently
qualified to represent him in this case.  Ms. Bosworth graduated from Stanford Law School in
2004, clerked for United States District Judge Henry Kennedy in the District of Columbia, and has
been an Assistant Federal Public Defender since 2005, where she has served as counsel in
approximately 500 federal criminal cases.  December 14, 2016 Hearing, ECF No. 90.

16

United States District Court
Northern District of California

United States District Court
Northern District of California

1    subjects of SEC investigations that the SEC staff has made "a preliminary determination to

2    recommend that the Commission file an action or institute a proceeding against them."  Securities

3    and Exchange Commission Division of Enforcement, Enforcement Manual ("SEC Enforcement

4    Manual") § 2.4.  A Wells Notice is not required, but SEC staff must "obtain an Associate Director

5    or Regional Director's approval before issuing a Wells Notice or determining to recommend an

6    enforcement action without issuing a Wells Notice."  *Id.*  Defendant argues that, by proceeding

7    without a Wells Notice, the SEC sought to deprive Defendant of the ability to defend himself

8    through an asset freeze.  Discovery Mot. at 9.

9         Second, on June 20, 2016, at a hearing before Judge Whyte, Defendant informed the Court

10    and Assistant U.S. Attorney Tim Lucey that Defendant intended to file the motion for release of

11    funds, discussed above.  ECF No. 60.  The parties set a briefing schedule where the opening brief

12    would be due on August 22, 2016, and a hearing date would be set for September 26, 2016.

13    Discovery Mot. at 3.

14         In the civil case before Judge Davila, on June 23, 2016, the Receiver filed a Motion to

15    Conclude Receivership, which would include disseminating to investors the $200,000 set aside for

16    attorney's fees under the indemnification agreement.[2]  Civil Case ECF No. 1164.  The original

17    hearing date for this Motion was October 20, 2016.  On July 6, 2016, the Receiver filed a motion

18    to shorten the time on the Motion to Conclude Receivership in order to move the hearing date to

19    August 18, 2016, four days before the Motion for Release of Funds was to be filed.  Civil Case

20    No. 1173.  Judge Davila, who was not informed of the forthcoming Motion for Release of Funds,

21    granted the motion to shorten the time, and set a hearing date of August 25, 2016 on the Motion to

22

23    _____

24    [2] In preliminary proceedings, Judge Davila found that Defendant had no right to attorney's fees
      under the indemnification agreement unless Defendant was not found guilty of civil fraud.  Civil
25    Case ECF No. 70.  Later, Judge Davila granted summary judgment against Defendant on the civil
      fraud claims.  Civil Case ECF No. 591.  Judge Davila then ordered disgorgement in the amount of
26    $7.782 million and a civil penalty of $10,000.  Civil Case ECF No. 622.  Thus, because Defendant
      has been found guilty of civil fraud, the Receiver asserts that Defendant no longer has a claim to
27    the $200,000 that was previously set aside.

28    17
      Case No. 14-CR-00531-LHK
      ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
      MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

Conclude Receivership.  Civil Case ECF No. 1175.  Judge Davila has not yet ruled on the Motion

to Conclude Receivership in order to allow a disposition of the instant motions, and the $200,000

is still in the custody of the Receiver.  Civil Case ECF No. 1224.  Defendant argues that the timing

of these events shows that the SEC, the U.S. Attorney's Office, and the Receiver sought to

manipulate the timing of the proceedings so as to deprive Defendant of assets needed for a

criminal defense.[3]

### B.        The Requested Discovery

On August 12, 2016, Defendant sent the U.S. Attorney's Office a discovery letter

requesting three categories of materials.  First, with respect to the timing of the Motion to

Conclude Receivership, Defendant requested that the U.S. Attorney's Office turn over the

following:

> [A]ll emails, handwritten notes, memoranda, and other records of communication,
> including handwritten and typed notes of telephone calls or messages, between
> the government (including AUSA Tim Lucey and any other members of the
> USAO working on this case), the receiver and his associates, the attorney to the
> receiver and his associates, and any other attorneys or employees of the SEC that
> relate to the scheduling, merits, or any other aspect of this motion to conclude the
> receivership as well as Mr. Feather's upcoming criminal motion.

Discovery Mot. Ex. A.

Second, Defendant requested all documents relevant to the decision of the SEC to file a

complaint against Mr. Feathers.  Specifically, Defendant requested information regarding the

SEC's decision not to issue a Wells Notice.

Third, Defendant requested that the U.S. Attorney's Office provide the SEC's "Formal

Order of Investigation," a document already provided to the Defendant by the SEC.

### C.        Legal Standards

---

[3] At the August 25, 2016 hearing in the civil case on the Motion to Conclude Receivership, the
Receiver stated that he did not know about Defendant's Motion for Release of Funds when he
filed the Motion to Conclude Receivership on July 6, 2016.  Discovery Reply at 3; Civil Case ECF
No. 1222.  However, the Receiver did not indicate whether he knew about Defendant's Motion
when he moved to advance the hearing on the Motion to Conclude Receivership.  *Id.*  Thus,
Defendant still seeks the discovery requested below.

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

### 1.        Federal Rule of Criminal Procedure 16 and *Brady*

Rule 16 requires that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . documents . . . if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E).  "Rule 16 materials need not be admissible, as long as there is a strong indication that . . . the evidence will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Johnson*, 2015 WL 3630952, at *1 (N.D. Cal. June 10, 2015) (internal quotation marks omitted); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (evidence is discoverable under Rule 16 "even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence.") (internal quotation marks omitted). The United States Supreme Court has interpreted "material to preparing the defense" to solely involve "defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996).  Thus, "[w]hile it might be argued that as a general matter, the concept of a 'defense' includes any claim that is a 'sword,' challenging the prosecution's conduct of the case, the term may encompass only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged." *Id.*

While Rule 16 encompasses all information "material to preparing the defense," *Brady* requires the U.S. Attorney's Office to disclose information in its possession, custody, or control if it is "favorable to an accused . . . [that] is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  "The *Brady* standard for materiality is higher than Rule 16's, and its scope narrower." *United States v. Pac. Gas & Elec. Co.*, 2016 WL 3185008, at *2 (N.D. Cal. June 8, 2016) (citing *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Rule 16 is thus broader than Brady.  Information that is not exculpatory or impeaching may still be relevant to developing a possible defense.")).  In order to trigger a duty of disclosure under *Brady*, material in the U.S. Attorney's Office's possession need not itself be admissible, but it

19

must at least have the strong potential to lead to admissible exculpatory evidence or otherwise strongly influence a defendant's case.  *See Malone v. Felker*, 453 F. App'x 754, 755 (9th Cir. 2011) (holding that the government did not need to disclose certain material under Brady because the material "did not adequately or reasonably suggest to the prosecutor that it was or would lead to material, favorable evidence for the defense."); *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 162 (2d Cir. 2008) ("Brady material need not be admissible if it could lead to admissible evidence.") (internal quotation marks omitted); *Ellsworth v. Warden*, 333 F.3d 1, 5 (1st Cir. 2003) ("[W]e think it plain that evidence itself inadmissible could be so promising a lead to strong exculpatory evidence that there could be no justification for withholding it."); *see also Butler v. Stephens*, 625 F. App'x 641, 655 (5th Cir. 2015) ("The suppressed evidence need not be admissible to be material under Brady; but it must, somehow, create a reasonable probability that the result of the proceeding would be different.").

Thus, under Rule 16 and *Brady*, the U.S. Attorney's Office must turn over documents that are (1) in its possession, custody, or control, and that (2) are likely to lead to admissible evidence or otherwise substantially assist in the defense.

### 3.    *Giglio*

In *Giglio v. United States*, 405 U.S. 150 (1972), the United States Supreme Court held that *Brady* extended to impeachment evidence of prosecution witnesses.  *Id.* at 186.  Evidence required under *Giglio* need not be disclosed until after a witness testifies.  *United States v. Rinn*, 586 F.2d 113, 119 (9th Cir. 1978) ("[S]ince information concerning "favor or deals" merely goes to the credibility of the witness, it need not be disclosed prior to the witness testifying."); *United States v. Laurins*, 660 F. Supp. 1579, 1584 (N.D. Cal. 1987) ("The government need not disclose this [*Giglio*] material prior to the direct examination of the relevant witness.").

### C.    Analysis

The Court first addresses the SEC's "Formal Order of Investigation."  Second, the Court discusses the discovery related to the SEC's decision not to issue a Wells Notice.  Third, the Court

20

discusses discovery related to the timing of the Receiver's Motion to Conclude Receivership. Finally, the Court discusses whether the U.S. Attorney's Office has an additional duty of disclosure under the due process clause.

### 1.    SEC's Formal Order of Investigation

First, the U.S. Attorney's Office has produced the "Formal Order of Investigation" to Defendant.  ECF No. 91.  Therefore, this request is DENIED as moot.

### 2.    SEC's Decision Not to Issue a Wells Notice

Defendant requests documents related to the SEC's decision not to issue a Wells Notice. Discovery Mot. at 8–9.  The Court first discusses this discovery under Rule 16 and then discusses it under *Brady* and *Giglio*.

### a.    Rule 16

The Court finds that the information regarding the SEC's decision not to issue a Wells Notice is not discoverable for two reasons.  First, Defendant has not satisfied his burden to show materiality under Rule 16.  Second, the information is privileged.  The Court addresses each reason in turn.

Under Rule 16, a defendant must make a threshold showing of materiality, which requires a presentation of "facts which would tend to show that the Government is in possession of information helpful to the defense."  *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).  "Neither a general description of the information sought nor conclusory allegations of materiality suffice."  *Id.*  In addition, "requests which are designed to generally cast for impeachment [evidence] . . . are not material.  Such requests are simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful."  *United States v. Salyer*, 271 F.R.D. 148, 157 (E.D. Cal. 2010) (as modified); *see United States v. Stever*, 603 F.3d 747 (9th Cir. 2010) (holding that discovery request did not satisfy the requirement of providing specific facts where the defendant requested the prison files of all inmates in a prison to find out if they were members of gangs in conflict with the defendant's gang).  Additionally, as

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

United States District Court
Northern District of California

1    discussed above, to be "material to preparing the defense," the discovery must be relevant to

2    "defendant's response to the Government's case in chief." *Armstrong*, 517 U.S. at 462.

3         Defendant argues that the SEC's decision in late 2011 or early 2012 not to issue a Wells

4    Notice is material because it might, in combination with other actions by the Receiver, show "a

5    larger pattern of conduct in which the government has acted to deny [Defendant] access to counsel

6    of his choice." Discovery Mot. at 9. Specifically, Defendant cites to the timing of the Receiver's

7    Motion to Conclude Receivership and the SEC's decision not to issue a Wells Notice. *Id.*

8    Defendant also refers in the instant Motion to an email from the Receiver to Defendant's current

9    counsel, Ms. Bosworth. Defendant states that Ms. Bosworth contacted the Receiver "to ascertain

10   his position on Mr. Feathers' request in the civil case for an order shortening time to hear the

11   motion to defer ruling on the legal fees," and that in response, Receiver's counsel stated that the

12   Receiver would "oppose any action taken by [Ms. Bosworth]." Discovery Mot. at 11 n.2.

13        However, even with this information, Defendant fails to connect the SEC's decision not to

14   issue a Wells Notice with the U.S. Attorney's Office's case in chief in the criminal case. Clearly,

15   the SEC's decision not to issue a Wells Notice does not affect whether Defendant committed the

16   substantive offenses at issue in this criminal case.

17        Defendant instead makes two arguments, which the Court addresses in turn. First,

18   Defendant argues that the information regarding the lack of a Wells Notice would potentially be

19   relevant to a "vindictive prosecution" defense, which would require Defendant to show that the

20   U.S. Attorney's office filed charges or "increase[d] the severity of alleged charges in response to

21   [Defendant's] exercise of constitutional or statutory rights." *United States v. Rosales-Lopez*, 617

22   F.2d 1349, 1357 (9th Cir. 1980) (increasing charges); *United States v. Jenkins*, 504 F.3d 694, 699

23   (9th Cir. 2007) (filing charges). To make such a claim, Defendant would need to "produc[e] direct

24   evidence of the prosecutor's punitive motivation" or show that the charges "were filed because [he

25   or she] exercised a statutory, procedural, or constitutional right in circumstances that give rise to

26   an appearance of vindictiveness." *Jenkins*, 504 F.3d at 699. The defendant has the initial burden

27                                                    22

28

United States District Court
Northern District of California

1   of showing an "appearance of vindictiveness" by "demonstrat[ing] a *reasonable likelihood* that the

2   government would not have brought the [] charges" had the defendant not exercised constitutional

3   or statutory rights.  *Id.* at 699–700.  Once an appearance of vindictiveness is established, the

4   prosecution has the burden of providing "objective evidence justifying the prosecutor's action."

5   *Id.* at 701.

6       In *Armstrong*, the United States Supreme Court established that Rule 16 does not

7   automatically allow discovery on affirmative defenses like vindictive prosecution.  *Armstrong*,

8   517 U.S. at 462 (noting that Rule 16 discovery acts as a "shield" rather than a "sword" against the

9   prosecution).  Instead, "a criminal defendant may be entitled to discovery if he or she establishes a

10  prima facie showing of a likelihood of vindictiveness by some evidence tending to show the

11  essential elements of the defense."  *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th

12  Cir. 1990).

13      In the instant case, Defendant has failed to establish a prima facie showing of a likelihood

14  of vindictiveness.  Defendant has not pointed to any constitutional, procedural, or statutory rights

15  that Defendant exercised before the U.S. Attorney's Office sought the indictment in the instant

16  case.  Additionally, the U.S. Attorney's Office indicted Defendant on October 29, 2014, more than

17  one year after Judge Davila granted summary judgment against Defendant and found that

18  Defendant had committed civil fraud.  *Compare* ECF No. 1, *with* Civil Case ECF No. 591.  There

19  was, therefore, an objective reason to indict Defendant.  Moreover, the facts Defendant cites—the

20  SEC's decision not to provide a Wells Notice, the Receiver's email,[4] and the Receiver's Motion to

21  Conclude Receivership—did not involve the U.S. Attorney's Office.  Defendant's argument that

22  the SEC, the Receiver, and the U.S. Attorney's Office jointly conspired to deprive Defendant of a

23  defense is sheer speculation, and therefore beyond the scope of Rule 16.  *United States v. Stinson*,

24

25  [4] At the December 14, 2016 hearing, Defense counsel alluded vaguely for the first time to other
    emails from the Receiver to Defendant, but did not identify any of the contents of these emails.

26  Moreover, Defendant did not raise these emails in his briefing or the previous hearing before
    Judge Whyte, so they are not properly before the Court.

27                                                                 23

28  Case No. 14-CR-00531-LHK
    ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
    MOTION TO COMPEL DISCOVERY

1    647 F.3d 1196, 1208 (9th Cir. 2011) ("A district court need not make such documents available

2    based on 'mere speculation about materials in the government's files.'"  (citation omitted)).

3          Second, Defendant argues that the information may be relevant for evidence of witness

4    bias or impeachment materials.  Discovery Mot. at 11.  However, Defendant does not identify any

5    such potential witnesses or any facts tending to show that the SEC has a bias against Defendant.

6    *See United States v. Larez*, 2013 WL 6252639, at *3 (N.D. Cal. Dec. 3, 2013) ("Larez contends

7    that the possible government witnesses are conspiring against him and that the records sought can

8    be used to impeach and rebut their testimony, and/or to corroborate other evidence.  The Court

9    finds that these general allegations, although not implausible, do not satisfy the requirement of

10   specific facts set forth by the Ninth Circuit . . . . Larez's counsel is making an educated guess . . . ,

11   but Rule 16 requires more.").

12         The Court next turns to whether the evidence would be available to Defendant under Rule

13   16 even if it were material.  The U.S. Attorney's Office argues that the information concerning the

14   Wells Notice cannot be produced because it is not in the U.S. Attorney's Office's "possession,

15   custody, or control."  Discovery Opp'n at 11–12.  Specifically, the U.S. Attorney's Office argues

16   that it has no access to the documents because the SEC has refused to disclose the materials based

17   on common law privileges, such as the deliberative process privilege.  *Id.*  Defendant argues that

18   the SEC and the U.S. Attorney's Office clearly have coordinated efforts, thus placing the

19   documents in the U.S. Attorney's Office's possession, custody, or control.  Discovery Reply at 4

20   ("The U.S. Attorney's Office and the SEC are both agencies of the Executive Branch, which

21   coordinate their efforts to enforce the same securities fraud laws in the criminal and civil arenas.").

22         Even if the Court assumes that the SEC and the U.S. Attorney's Office have "coordinate[d]

23   their efforts" in this case, Rule 16(a)(2) would, as discussed further below, bar disclosure.  Rule

24   16(a)(2) eliminates disclosure of "reports, memoranda, or other internal government documents

25   made by an attorney for the government or other government agent in connection with

26   investigating or prosecuting the case."  Fed. R. Civ. P. 16(a)(2).  The term "'government' means

27                                          24

28   Case No. 14-CR-00531-LHK
     ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
     MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

'federal government.'" *United States v. Fort*, 472 F.3d 1106, 1111 (9th Cir. 2007).  In *Fort*, the Ninth Circuit held that police reports prepared by state police before federal government involvement in the case were protected under Rule 16(a)(2) in a subsequent federal prosecution because the state police were considered "government agents."  *Id.*  The facts are similar here. Even if we assume that the materials are in the U.S. Attorney's Office's "possession, custody, or control," the documents requested by Defendant are "internal government documents" that were prepared "in connection with investigating . . . the case."  Fed. R. Civ. P. 16(a)(2).  Although the civil case came before the criminal case, under *Fort*, the documents are now part of "a unified federal prosecution of [Defendant]."  *Fort*, 472 F.3d at 1118.  Moreover, "[m]andating that the government turn over documents to allow Defendant to attack a purely discretionary decision raises not only Rule 16(a)(2) compliance problems and work-product privilege issues, but also separation of powers concerns."  *United States v. Stone*, 2013 WL 5934346, at *3 (E.D. Cal. Nov. 5, 2013).

Thus, Rule 16 does not provide a basis for compelling the production of documents related to the SEC's decision not to issue a Wells Notice.

### b.    *Brady* and *Giglio*

Defendant also requests the information regarding the lack of a Wells Notice based on *Brady* and *Giglio*.  *Brady* requires the prosecution to disclose information in its possession that is "favorable to an accused . . . [and] material either to guilt or to punishment."  *Brady*, 373 U.S. at 87.  As discussed above, "[t]he *Brady* standard for materiality is higher than Rule 16's, and its scope narrower."  *Pac. Gas & Elec. Co.*, 2016 WL 3185008 at *2.  *Brady* material generally only must be disclosed before trial.  *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (finding that disclosure made to the defense during trial did not violate Brady).  However, disclosure "must be made at a time when disclosure would be of value to the accused." *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985); *see also United States v. Shelton*, 588 F.2d 1242, 1247 (9th Cir. 1978) (delay in disclosure only requires reversal if it so prejudiced

appellant's preparation or presentation of his defense that he was prevented from receiving a fair trial).

Giglio material is impeachment evidence that is "favorable to the accused." Giglio, 405 U.S. at 186. Evidence required under Giglio need not be disclosed until after a witness testifies at trial. Rinn, 586 F.2d at 119 ("[S]ince information concerning 'favor or deals' merely goes to the credibility of the witness, it need not be disclosed prior to the witness testifying.").

Although the Court finds, above, that the requested information regarding the SEC's decision not to issue a Wells Notice is not discoverable under Rule 16, the U.S. Attorney's Office is under a continuing obligation to produce exculpatory evidence under Brady and Giglio. As the U.S. Attorney's Office and Defendant represented at the December 14, 2016 hearing, the discovery the U.S. Attorney's Office has provided to Defendant is largely composed of files obtained from the SEC. Thus, the SEC's "possession, custody, or control" is imputed to the U.S. Attorney's Office. See United States v. W.R. Grace, 401 F. Supp. 2d 1069, 1079 (D. Mont. 2005) ("The agencies supplied the requested information to the prosecution and that shows that the prosecution has access to the agencies' files. Accordingly, exculpatory information in the files of the agencies listed above is within the prosecution's 'possession and control' for Brady purposes and must be reviewed for evidence favorable to the Defendants."). The U.S. Attorney's Office, therefore, is under a continuing obligation to review these documents for exculpatory evidence under Brady and impeachment evidence under Giglio, and to produce the information under the timeline provided by those doctrines.

Accordingly, Defendant's Motion to Compel Discovery with respect to the SEC's decision not to issue a Wells Notice is DENIED as to Rule 16, and GRANTED as to Brady and Giglio.

### 3. Evidence of the Timing of the Receiver's Motion to Conclude Receivership

As discussed above, Defendant requests that the U.S. Attorney's Office turn over the following documents:

[A]ll emails, handwritten notes, memoranda, and other records of communication,

26

United States District Court
Northern District of California

including handwritten and typed notes of telephone calls or messages, between the government (including AUSA Tim Lucey and any other members of the USAO working on this case), the receiver and his associates, the attorney to the receiver and his associates, and any other attorneys or employees of the SEC that relate to the scheduling, merits, or any other aspect of this motion to conclude the receivership as well as Mr. Feather's upcoming criminal motion.

Discovery Mot. Ex. A.

In response, the U.S. Attorney's Office has agreed to produce a subset of those communications.  The U.S. Attorney's Office stated the following:

> [I]n a demonstration of its good faith as well as its potential obligations under *Brady*, the United States will undertake to review all of the documents in its possession, custody, and control that currently exist in this case, in order to identify and thereafter after [sic] produce any documents in its possession, custody, or control, to the extent such documents even exist, and that are not otherwise protected from disclosure under Rule 16(a)(2) and/or are privileged under common law, that involve any communications regarding the timing of the Receiver's Motion to Conclude the Receivership that are either material to the Defendant's defenses to the Government's case-in-chief or come within the scope of *Brady*.
>
> In addition, the United States will also identify and retain, as part of this good faith effort, any such documents that are encompassed by its obligations, pursuant to *Giglio* and the Jencks Act and, to the extent such documents even exist, provide them to the Defendant in advance of trial in this action.

Discovery Opp'n at 10–11.  This offering by the U.S. Attorney's Office does not fully satisfy Defendant's discovery requests.  *See* Discovery Reply at 3 (Defendant renewing request for discovery on materials not covered in the Government's offering).  Therefore, the Court next turns to address whether the U.S. Attorney's Office must comply with Defendant's requests under Rule 16, *Brady*, or *Giglio*.

### a.     Rule 16

Among other objections to the discovery request, the U.S. Attorney's Office argues that (1) the documents of the Receiver and the Receiver's attorneys are outside the U.S. Attorney's Office's possession, custody or control, and (2) the request is not material.  The Court addresses each objection in turn.

27

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

### i.        Possession, Custody, or Control

The U.S. Attorney's Office's obligation to disclose materials under Rule 16 (as well as *Brady* and *Giglio*) only extends to materials within the prosecution's "possession, custody, or control."   *See* Fed. R. Crim. P. 16(a)(1)(E); *Brady*, 373 U.S. 83; *Giglio*, 405 U.S. 150, 154 (applying the *Brady* standard).  An agency's documents are in the prosecution's possession, custody, or control if the agency is part of the U.S. Attorney's Office's investigation or if the U.S. Attorney's Office "otherwise has 'knowledge' of and 'access' to that material." *Fort*, 478 F.3d at 1102.

The U.S. Attorney's Office contends that documents in the possession, custody, or control of the Receiver and the Receiver's attorneys are not in the possession, custody, or control of the U.S. Attorney's Office.  Receivers are appointed by courts to "to prevent further dissipation of defrauded investors' assets." *S.E.C. v. Wencke*, 783 F.2d 829, 837 (9th Cir. 1986).  Thus, the Receiver is not part of the executive branch, but an "officer of the court." *In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992).  The Receiver's attorneys in this case were also appointed by the Court.  Civil Case ECF No. 36.  Thus, the Receiver and the Receiver's attorneys are not "involv[ed] in the investigation" in a manner that places the Receiver's and the Receiver's attorneys' records in the U.S. Attorney's Office's possession, custody, or control. *Santiago*, 46 F.3d at 893.

Thus, the motion to compel discovery is DENIED to the extent it requests information that is in the possession of the Receiver and the Receiver's attorneys.  However, because the U.S. Attorney's Office has not made the same objection as to the U.S. Attorney's Office's and the SEC's documents, the Court turns to the U.S. Attorney's Office's objection based on materiality.

### ii.        Materiality

The U.S. Attorney's Office argues that the requested documents do not fall within the scope of Rule 16.  As discussed above, Defendant must make a threshold demonstration of "facts which would tend to show that the Government is in possession of information helpful to the

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

defense." *Mandel*, 914 F.2d at 1219.  In addition, "requests which are designed to generally cast for impeachment [evidence] . . . are not material.  Such requests are simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful." *Salyer*, 271 F.R.D. at 157.

Defendant makes three arguments as to why the requested discovery is material.  The Court addresses each in turn.  First, Defendant argues that discovery on the timing of the Receiver's Motion to Conclude Receivership is material "to further investigate whether grounds exist under the Due Process Clause of the Fifth Amendment to order the release of funds." Discovery Mot. at 7.  This argument fails to demonstrate how this discovery would be "reasonably likely to lead to admissible evidence" relevant to rebutting the U.S. Attorney's Office's "case in chief." *Price*, 566 F.3d at 913 n.14 (discussing reasonable likelihood of admissible evidence standard); *Armstrong*, 17 U.S. at 462 (noting that evidence must be relevant to Defendant's case in chief).  The requested discovery has no bearing on whether or not Defendant did or did not commit the crimes of which he is accused.

Second, Defendant argues that this evidence is encompassed by Rule 16 because, as discussed with respect to the discovery concerning the SEC's decision not to issue a Wells Notice, the discovery would be relevant to a vindictive prosecution defense.  Discovery Mot. at 9–10. However, Defendant has not "establishe[d] a prima facie showing of a likelihood of vindictiveness by some evidence tending to show the essential elements of the defense." *One 1985 Mercedes*, 917 F.2d at 421.  The evidence Defendant has referenced—the SEC's decision not to issue a Wells Notice, and the email between the Receiver and Defendant—is only connected to the U.S. Attorney's Office by speculation.  Thus, because there is no indication that the U.S. Attorney's Office brought the prosecution for vindictive reasons, such a theory does not make the requested discovery material.

Finally, Defendant argues that the timing of the Motion to Conclude Receivership "indicate[s] that the prosecution's case and/or witnesses may be tainted by bias against Mr.

29

United States District Court
Northern District of California

Feathers.  The requested discovery is necessary to investigate bias and potential impeachment."  Discovery Mot. at 11.  However, with respect to the prosecution's case, as noted above, there has been no showing that the U.S. Attorney's Office was involved in any of the misconduct alleged by Defendant.

Moreover, Defendant has identified no potential witness for impeachment.  At the December 14, 2016 hearing, the Court asked whether the Receiver could be a potential witness.  The Defendant did not respond, but the U.S. Attorney's Office stated that it could not foreclose the possibility.

Accordingly, the Court addresses whether communications concerning the Motion to Conclude Receivership are discoverable under Rule 16 to impeach the Receiver.  The Receiver is appointed to "prevent further dissipation of defrauded investors' assets."  *SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986); *see also SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir.1986) ("[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors.").

The Receiver and Defendant have had a contentious relationship throughout the civil case.  In addition to Defendant's complaints about the Receiver set forth in the briefing and at the two hearings on the instant Motion, the Receiver states in the Motion to Conclude Receivership that Judge Davila has already considered several requests by Defendant to sue the Receiver and has found each of them to lack merit.  Civil Case ECF No. 1164 at 17–19.  The Receiver further states that Defendant filed a claim with the Chartered Financial Analyst Institute against the Receiver, which was found to lack merit, and filed complaints with the California State Bar against Receiver's counsel, which were also found to lack merit.  *Id.*

Despite this contentious relationship, Defendant has failed to point to facts showing any connection between the Receiver and the U.S. Attorney's Office and the SEC.  Thus, Defendant has failed to set forth "facts which would tend to show that the Government is in possession of information" responsive to Defendant's request.  *Mandel*, 914 F.2d at 1219.  Defendant's request

30

that these communications exist and that the SEC or the U.S. Attorney's Office is in possession of such communications is speculative and based purely on the theory that the U.S. Attorney's Office and SEC have conspired with the Receiver against Defendant. *See Stinson*, 647 F.3d at 1208 ("A district court need not make such documents available based on 'mere speculation about materials in the government's files.'" (citation omitted)).

With respect to any other potential witnesses, Defendant's vague allusion that the discovery is necessary to show bias is insufficient. *See Larez*, 2013 WL 6252639 at *3 ("Larez contends that the possible government witnesses are conspiring against him and that the records sought can be used to impeach and rebut their testimony, and/or to corroborate other evidence. The Court finds that these general allegations, although not implausible, do not satisfy the requirement of specific facts set forth by the Ninth Circuit . . . . Larez's counsel is making an educated guess . . . , but Rule 16 requires more.").

Thus, because the requested communications of the Receiver and the Receiver's attorneys are outside the U.S. Attorney's Office's possession, custody, or control, and Defendant has not satisfied his burden to show the materiality of the other communications, Rule 16 does not provide a basis for compelling the production of the information concerning the timing of the Motion to Conclude Receivership.

### b. *Brady* and *Giglio*

Defendant also requests the information concerning the timing of the Receiver's Motion to Conclude Receivership based on *Brady* and *Giglio*. As stated above, the U.S. Attorney's Office has stated that it will produce *Brady* and *Giglio* material concerning the timing of the Motion to Conclude Receivership that is in its possession, but not those communications in the SEC's possession. Discovery Opp'n at 10–11. However, as the Court held above, the SEC's possession of *Brady* and *Giglio* evidence is imputed to the U.S. Attorney's Office. *W.R. Grace*, 401 F. Supp. 2d at 1079 ("The agencies supplied the requested information to the prosecution and that shows that the prosecution has access to the agencies' files. Accordingly, exculpatory information in the

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

United States District Court
Northern District of California

United States District Court
Northern District of California

files of the agencies listed above is within the prosecution's 'possession and control' for *Brady* purposes and must be reviewed for evidence favorable to the Defendants."). The U.S. Attorney's Office, therefore, is under a continuing obligation to review the communications in the possession, custody, or control of the U.S. Attorney's Office and the SEC for exculpatory evidence under *Brady* and impeachment evidence under *Giglio*, and to produce the information under the timeline provided by those doctrines.

Accordingly, Defendant's Motion to Compel Discovery with respect to the timing of the Motion to Conclude Receivership is DENIED as to Rule 16, but GRANTED as to *Brady* and *Giglio*.

### 4.    Due Process Right to Discovery

Defendant's final argument applies to the requested discovery regarding the SEC's decision not to issue a Wells Notice and the timing of the Motion to Conclude Receivership. Defendant argues that both of these types of discovery indicate that the U.S. Attorney's Office, the SEC, and the Receiver may have taken actions to deprive Defendant of his Sixth Amendment right to counsel of choice. Discovery Mot. at 5. Defendant argues that he has a due process right to obtain evidence that these actors were attempting to deprive Defendant of his right to counsel even if it does not fall within Rule 16, *Brady*, or *Giglio*. *Id.*

However, Defendant does not cite to any case that has provided discovery in criminal proceedings based purely on the potential deprivation of a trial right. Indeed, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .'" *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)). Therefore, Defendant has no freestanding due process right to obtain discovery on whether the Receiver, the U.S. Attorney's Office, and the SEC are seeking to deprive Defendant of his Sixth Amendment right.

Therefore, Defendant's request to compel discovery separate from Rule 16, *Brady*, and

Case No. 14-CR-00531-LHK
ORDER DENYING MOTION TO RELEASE FUNDS AND GRANTING IN PART AND DENYING IN PART
MOTION TO COMPEL DISCOVERY

1    *Giglio* is DENIED.

2    **IV.    CONCLUSION**

3            For the foregoing reasons, the Court DENIES Defendant's Motion for Release of Funds

4    and GRANTS IN PART and DENIES IN PART Defendant's Motion to Compel Discovery.

5    **IT IS SO ORDERED.**

6

7    Dated: December 19, 2016

8                                                            *Lucy H. Koh*

9                                                            LUCY H. KOH
                                                             United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                   33

28

United States District Court
Northern District of California